Case number 23-3019. United States of America v. David Floyd, appellant. Ms. Amato for the appellant. Ms. Kelly for the appellant. Morning, Ms. Amato. Good morning. Good morning, your honors. May it please the court. On behalf of Mr. Floyd, we assert that his trial counsel at the district court level was ineffective during the plea negotiation phase by agreeing to an enhancement, which was part of the, ultimately, the plea agreement. Agreement, which was signed and agreed to. He was ineffective in the negotiation, in informing the client, the defendant, Mr. Floyd at that time, that this was an appropriate plea agreement. And Mr. Floyd, in this case, was charged, as the court is aware, with 1 count of drug conspiracy. But as part of the guideline calculations, as part of the plea agreement, the parties agreed to a 2-level upward adjustment under 2D1.1B1, otherwise known as the gun enhancement. Did the parties agree to that? I mean, Mr. Floyd's counsel reserved the right to argue that it was not applicable, right? Did not. The parties agreed that the application of the guidelines would start out with a drug offense level, which they agreed to, and then also to the 2-level points upward for the 2D1.1B enhancement. So, this was not a plea where the parties agreed to disagree. This was a plea where both parties agreed to that. And so, therefore, if later on, defense counsel tried to object to it, it would have been a breach of the plea. And so therein lies the issue and the ineffectiveness in agreeing straight out in the plea agreement that the application applied, the enhancement applied. And submit that under the Strickland prong, the first prong, that it was, that trial counsel's conduct fell below an objective standard of reasonableness. How are we to interpret the reservation of allocution section of the plea agreement? That said, that the parties could address the correctness of any guidelines calculation by the pre-sentence report. Writer or the court, right? And even if those calculations differed from the estimated guidelines range in the plea agreement. So. That's a different scenario from what they could object to relative to the plea agreement. The plea agreement, the parties have agreed that these are the, this is the framework. Drug offense level, plus the 2 points for the enhancement. Now, if the pre-sentence report writer came back with some other enhancements, then the parties could have disagreed and objected to those additional enhancements. But as to the enhancement of the 2D1.1B1, which was part of the plea agreement, the defense could not at that point object because it was part of the plea agreement. So, the pre-sentence report, if they came up with additional enhancements, that was something the defense reserved the right to object to, but that's not what happened here. It wasn't that the pre-sentence report just came up with an additional enhancement. The enhancement was part of the plea agreement. And so that's the issue here, because that enhancement did not apply. So, so, so. The commentary for the guidelines in lots of cases in this and other courts talk about the fact that guns and drugs go together. And that's, in fact, the reason why the enhancement is in the guidelines. So, it seems to me that for you to prevail. On your deficiency argument. You have to show that in this case. It was completely unreasonable. For his lawyer to agree. That drugs and guns could go together in this case. Excuse me. This circuit has found that there needs to be a nexus between the guns and the drugs. In the case of US versus Miller, 890F317, DC circuit case of 2019. And here we have no nexus between the guns and the drug conspiracy. What we have here, the statement of facts points out. Basically, puts out what the facts are in this case on January 19th. We have Mr. Floyd and his brother traveling from the United States down to St. Thomas. The next day, January 20th of 2021. Mr. Floyd and his brother go to the post office in St. Thomas and they seek to mail 2 packages of the cocaine. The drugs from St. Thomas. The packages are intercepted by law enforcement. Ultimately, there's a control delivery of these drugs on January 29th, 2021 to an address in Bladensburg Road, DC. The brother of Mr. Floyd is present. He receives the drugs. He's arrested a month and a half later on March 12th is when Mr. Floyd then seeks to send the 2 weapons, which are part of this 2D1.1B1 enhancement. But not back to St. Thomas. He sends he's trying to send them to St. Martin. So there's, you've got this 1 and a half month time period, but regardless from when the drugs were being sent from St. Thomas to the United States. But even if it was the next day, there's, there's no nexus here in the statement of facts that were presented to the court or at any point in any of the arguments in the plea hearing on the transcript that tied those guns that were Mr. Floyd tried to send to St. Martin to the drugs, the plea paperwork, and the statement of facts then goes on to jumps to October 7th, some 6, 7 months later. In which a wire tap is requested by law enforcement of Mr. Floyd's phone for a 30 day period based on that. It's determined that Mr. Floyd is still selling drugs. Then there's a search warrant on November 10th, and then he's arrested, but those guns that are that he tries to ship on March 12th. I mean, there's, there's no connection whatsoever. And there's guns that are found when they rest him, right at his residence or not residents that he's connected to. There is a gun that's found at the residence that he residents that he's connected to. He's not arrested there. So the question is, whether there's constructive possession. What's interesting though, and the guns are next to. Scales and a bunch of other drug paraphernalia. Correct. But what's interesting about that gun and this. Lee, he is the government was very specific in their statement of facts as to what gun applied to the 2D1.1B enhancement. And although they mentioned in the, the section, which is section number 1 for the drug conspiracy, that weapon that's found at that other location, they never mentioned it in the section for the 2D1.1B1. And I have to think, well, why is that? And. I believe that there are requirement. That they some sort of specificity requirement that they mentioned a particular gun. As a basis for that enhancement in the either. In the plea agreement or. Or indictment or yes, I believe there should be, because how else can 1, how can the court then ascertain whether or not the enhancement applies to say there should be. But what authority is there that. There is such a requirement. Well, I believe the guidelines require there to be. I mean, for this to come into play, how how would 1 be able to. Bring it into play if 1 just I mean, that's sentencing. You know, as you're well aware, the government brings up all sorts of things, some things that aren't charged some things that aren't even in the statement of offense at all. Right and they can be used to. You know, as part of the guidelines calculation. So, we've never at least I'm not aware of a case where we've said that. You can't do that because that wasn't set forth. At the time of the plea certainly, but I would say in this particular case, because they were so specific as to which gun applied that the government at the trial level didn't feel that they had enough. Evidence as well to tie that other gun in that residence, although they indicate that Mr. Floyd was connected to that residence. They don't indicate that his name was on the lease, which would mean that there were other people connected to that residence. There's nothing in the plea agreement in which it's definitive that Mr. Floyd agreed that he possessed that weapon. So, I believe the government had several hurdles. There was no DNA evidence in the record that tied him to that gun. There was no fingerprint evidence that tied him to that gun. So, I believe, in the record, the government felt that they had an issue being able to put that forth as an enhancement, which and therefore they never brought it forth to argue that that would have been another enhancement that they could have presented in support. He gave up a litigable issue on the enhancement. In return for that, he got all sorts of benefits. They didn't prosecute on the ghost gun. They didn't seek the mandatory minimum of 10 years. They didn't prosecute him for being a felon in possession. Sounds like a pretty good deal. Well, I mean, he was charged in 1 count for the government to have a broad additional counts that would have required more work and for the government might have been just as happy to try to negotiate this. So they wouldn't have to do that additional work. All right, we'll give you some time on rebuttal. Thank you. Morning may please the court Catherine Kelly on behalf of the United States. Your honor. I would like to point out just in addition to the points the court had made linking the gun as a proper reason for the gun enhancement in this case, there was also in this situation. Mr. Floyd has shown no prejudice that would show that his counsel was ineffective as the quarter just pointed out that the gun enhancement was not an effective way to link the gun to the gun. And just to point it out, there were the plea agreement freed him from numerous other convictions or potential convictions. He had the potential without the plea agreement to be sentenced to a mandatory minimum of 10 years rather than the mandatory minimum of 5 years that was placed in the agreement terms. He received 3 points excuse me for the early acceptance of responsibility by pleading guilty freed him also from prosecution separately under 922 G for the gun he used at the Maryland firing range during the conspiracy. The guns email to see Martin as he possessed them in the district of Columbia while he was mailing them on government indict those in the 1st place. If if if if this was such a big deal, I mean, he didn't have to negotiate anything away with respect to that because the government didn't indict it in the 1st place the government in regard to the guns specifically sent to say Martin your honor. Well, the government certainly could have charged that as a separate 922 G offense as during the plea bargaining. They chose not to, and they also could have charged the Glock that was found in the W. street apartment. I understand that. But, but. Well, there's 2 aspects of this. The 1st aspect is, is that. You say that there's no prejudice because all of those things could have been charged. But the government could have charged those all along and they never did. The case was pending for over a year before the plea agreement was reached. If I remember correctly, it had been pending your honor. But my understanding of the plea negotiations is that those were also ongoing over the over the course of time. And I believe he had 3 attorneys. So this was something that was ongoing, but there is no reason why the government couldn't have charged those. And particularly in regard to what defense counsel said about the gun at the W. street apartment, there are strong links of Mr. Floyd to that apartment. Number 1, he rented that apartment. He also visited almost daily before going to his mother's house, where he dealt and distributed drugs. Mr. Floyd's passport was found there along with, I believe, a digital scale. $28,500 and the Glock 9 millimeter gun, which was loaded. So there are very strong ties to the W. street apartment and Mr. Floyd and and drug dealing. That's at pages 64 and 65 of the public record in this case. Let me ask you about how we're supposed to view prejudice. Why isn't the prejudice prism, the prism of sentencing as opposed to what he could have been charged with had the plea agreement not gone forward? I mean, his claim is that this 1 specific sentencing enhancement shouldn't have been agreed to. And if it hadn't been, then he could have gotten, he would have started with a different guidelines range, which presumptively would have benefited him because that would be, you know, kind of the starting point, so to speak, and sentencing. So, why is it that the correct prism to look at the prejudice because when you're looking at a defendant who has claimed that the prejudices arising from his attorney's allegedly deficient performance during plea negotiations, the remedy for any potential deficient performance by his counsel is not simply just to take away a plea provision or rather a sentencing provision that he doesn't like. You don't take away a term of the plea agreement. You have to look at the prejudice standard that applies in that situation, which is whether or not, but for counsel's allegedly deficient performance, the defendant would have, there's a reasonable probability that Mr. Floyd would not have pleaded guilty and would have insisted on going to trial. And Mr. Floyd has not met that burden here at all. In fact, he has not asserted, in fact, has been insistent that he wanted to enter his plea agreement. And in fact, he wanted to keep this plea agreement, even when he was complaining about the gun enhancement at the hearing right before his sentencing. So, for those reasons, he has not ever met the standard that actually applies to alleged deficiency during plea negotiations. And again, going to the prejudice, the court has been clear in United States versus Scanlon that neither this court nor the district court can modify or amend a plea agreement. So, what Mr. Floyd is really asking for here as for this court to remove the gun enhancement sentencing provision that he now doesn't like in his plea agreement, there's that's just not a possibility that remedy is just simply inappropriate. And again, when you look at the prejudice, the facts don't support prejudice, even if you used Mr. Floyd's inaccurate prejudice analysis. So, let me ask you this. Suppose a defense lawyer agrees in a plea agreement to a sentencing enhancement that is, when we look at it now, was just patently not applicable. Assume that fact for the hypothetic. Are you saying that on review, the question is whether had the lawyer properly advised the defendant and not agreed to that? The question is whether the defendant had had the defendant known that would have gone to trial? Yes, we believe that is the standard. So, why is that the standard in a situation where a reasonably competent lawyer would never have agreed to that enhancement because it doesn't apply? We would find that to be deficient performance. And wouldn't we say, well, we don't know, we can't say that there was no prejudice because the government might agree to a plea agreement without this illegal enhancement, even if the defendant didn't really want to go to trial. The government didn't want to go to trial either. That's why they ended into a plea agreement. Well, I think another way that that prejudice standard has been put is to the remedy for an unknowing and involuntary plea agreement would be to permit the defendant to withdraw his guilty plea and return the parties to the negotiating table. So, stated that way, the point really is to unwind the plea agreement. If there's a problem with the plea agreement, that doesn't necessarily mean that the government then absolutely has to take him to trial. If there is a way to negotiate another plea agreement that's favorable to both sides, the parties are still available to do that. But that's precisely my point. So, why then isn't that really the prism that we're looking at and not necessarily that there has to be a showing that the defendant intended to or would go to trial if the plea agreement were unwell? I think that either wording can be used. I believe I've seen that in different cases that the wording can be used in that regard as well. There is a point, though, that we pointed out in the Lafler v. Cooper case is that the remedy has to neutralize the taint of whatever constitutional violation is at play, but it can't grant a windfall to the defendant. And what the defendant is asking for here is just to simply have this court remove what he now sees as an objectionable part of his plea agreement and then continue on to sentencing as if that provision didn't become part of the plea agreement in the first place. And that's the part that we think is inappropriate. What could have been done in this case is that the government could have substituted the gun found at W Street for the guns mailed to St. Martin if that became too objectionable in future plea negotiations. Because it sounds like Mr. Floyd, from what he told the court just before his sentencing hearings, he didn't want to keep the plea agreement, but our point is, you can't just simply excise part of the plea agreement that you don't like, because that is a windfall to the defendant. All the terms of the plea agreement have to be renegotiated. It can't just be a matter of picking and choosing at the time of sentencing, which provisions of the plea agreement that you fairly negotiated, mind you, with counsel, that the district court is not going to be able to do that. So, we think it would be inappropriate to simply excise that term of the plea agreement that he now disagrees with, particularly here where the district court found to be effective and found to have well represented Mr. Floyd in this case. So, particularly here, where the district court has heard from Mr. Floyd and his counsel, we think it would be particularly inappropriate to simply excise the term of the plea agreement that he now disagrees with. Thank you. And I wanted to point out that this wasn't, this isn't a case where Mr. Floyd is trying to receive some type of a windfall. During the plea hearing, he actually brought up to the court when the court was going, when the parties put on the record, what the plea agreement was, and the parties put on the record, the drug offense, as well as the 2D1.1B1 enhancement. And when he was asked about those guidelines, he lodged an objection and said he didn't agree with those that they were incorrect. And we know that he didn't really understand or wasn't given full clarity relative to the guidelines, because then later on in the plea hearing, the judge asked him if he had spoken with his counsel about sentencing and how the sentencing worked. And he said no. And then a recess was taken. And also to clarify what those issues were. So, Mr. Floyd sought at that point to lodge an objection to the guidelines. Basically, it didn't go anywhere. It wasn't cured. And then it's sentencing after he then had the time further to review the pre-sentence report and see most definitely that those guidelines were there and the enhancement was there. But then he brought up the whole ineffective assistance claim and went from there. Suppose we were to agree with you. What is the remedy you think that we should give you for your client? Well, I mean, of course, Mr. Floyd is asking for sentencing, re-sentencing without the enhancement. And what authority is there for that remedy? Well, looking at the U.S. v. Thomas case before this circuit, in which this court did specifically find that, excuse me, that if a defendant can show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time, that he has satisfied that prejudicial prong. I mean, we know that he in terms of the plea, he didn't want to plead with those two points. We don't have on the record, though, whether if it's a question of either this plea or going to trial, which he would have chosen. That's that's not in the record. We just know that he was seeking a plea without without these two points. And so his remedy ultimately is is to be re-sentenced without all of the benefits of your bargain with none of the corresponding burdens. Well, again, I mean, he had brought the issue up to the court during the plea hearing. It wasn't cured and and I guess that's where we're at at this point. Thank you. Thank you. Ms. Amato, you were appointed by the court to represent Mr. Floyd in this case, and the court thanks you for your assistance. Thank you, Your Honors. The case is submitted.
judges: Wilkins; Katsas; Rao